(164 App. Div. 134)

## In re DUNN. (No. 6186.)

(Supreme Court, Appellate Division, First Department. October 23, 1914.)

EXECUTORS AND ADMINISTRATORS (§ 511*)—ACCOUNTING—COMPENSATION OF REFEREE.

Where, on the judicial settlement of an executor's accounts, a reference was had, the Surrogate's Court had no authority to order the executor to take up the referee's report and pay the fees of the referee and the stenographer, where the report had never been filed and the fees had not been taxed, especially where such order was supported only by an affidavit made by the attorney for the adverse party on information and belief, unaccompanied by bills or affidavits from the referee or stenographer showing that the amounts claimed represented the time necessarily employed in the reference, as referees in Surrogate's Court are assimilated by the statute to referees in the Supreme Court, and if the interest of the prevailing party does not secure the taking up of the report, the referee must file the report and may then sue for his fees.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2257–2266; Dec. Dig. § 511.*]

Appeal from Surrogate's Court, New York County.

Proceeding for the judicial settlement of the account of Bart Dunn, as executor of Thomas J. Dunn, deceased. From an order directing the executor to take up a referee's report and pay the fees of the referee and stenographer, the executor appeals. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Hamilton, Gregory & Freeman, of New York City (William H. Hamilton, of New York City, of counsel, and Norman C. Conklin, of New York City, on the brief), for appellant.

Louis Sturcke, of New York City, for respondents.

CLARKE, J. This is an appeal from an order of the Surrogate's Court directing that the executor take up within 10 days after the entry of the order a referee's report, and pay within the same time to the referee the sum of $2,340 as and for his fees and to the stenographer $73.50 as the balance of his fees upon said reference. The order was based upon an affidavit of an attorney for two judgment creditors of the estate, which sets up that upon the accounting of the executor a referee had been appointed, and that upon the first hearing before said referee a stipulation was entered upon the minutes that the compensation of the referee should be at the rate of $15 an hour for the time to be occupied in the business of the reference, to be paid from the estate, and that three copies of the stenographer's minutes at the rate of 35 cents per folio should be furnished, also payable from the estate. He states further:

"The time of the referee to file his report or deliver it to the attorneys will shortly expire. I have been informed by said referee, and I verily believe, that his report herein has been finished and signed and is now ready for filing or delivery, and the referee has duly informed all parties of that fact, and has requested the executor's attorneys that his said report be taken up and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that his fees be paid, as well as that of a balance due to the stenographer herein; but the executor and his attorneys have so far failed to do so. The fees of the referee amount to the sum of $2,340, and I verily believe, basing my belief upon information given me by said referee and his secretary, that that amount is figured upon the basis of the rate fixed by the aforementioned stipulation; that is to say, that the referee has spent actually 156 hours in the business of said reference. I have further been informed, and I verily believe, that there is a balance due to the stenographer who took the minutes of the reference of the sum of $73.50, and that said sum is accurately figured at the rate fixed by the aforementioned stipulation."

It therefore appears that a summary order has been made for the payment of this large sum of money as referee's and stenographer's fees upon an affidavit by an attorney based upon information and belief, where the referee's report has neither been delivered nor filed, where no bills or affidavits from either the referee or the stenographer were submitted, and where said fees have not been taxed. The sole authority claimed for such order is certain surrogate's opinions which do not appear to have been reviewed by an appellate court.

In Matter of Hurd, 6 Misc. Rep. 171, 26 N. Y. Supp. 893, decided in December, 1893, in the Surrogate's Court, Kings County, the referee filed his report within 60 days from the final submission of the case. Nearly a year elapsed without any steps being taken, when an application by the referee was made for an order taxing his fees and directing the accounting executor to pay the same as taxed. Surrogate Abbott said:

"The question whether the surrogate has power to make such an order seems to be entirely novel. Section 2546 of the Code provides that the surrogate may appoint a referee in certain special proceedings, whose power and compensation (see, also, section 2566) shall be the same as a referee appointed by the Supreme Court for the trial of an issue of fact in an action. The fees of a referee appointed under this section, therefore, are limited to those of a referee appointed by the Supreme Court. It has been held that, when a referee appointed by the Supreme Court is unable to collect his fees, his only remedy is by action. Geib v. Topping, 83 N. Y. 46."

Referring to the accounting proceeding in the Surrogate's Court, the surrogate proceeded:

"The accounting executor is its officer, over whom it has general supervision and control. Code, § 2472, subd. 3. It is his duty as such officer to manage, pay out, and distribute the personalty according to the will of the testator, and as directed or approved by the court that, by its letters testamentary, has authorized him so to do. For the purpose of such distribution the fund is in court, and there the executor seeks the final approval of his acts, with directions as to the distribution of the funds remaining and his discharge from the responsibilities of his office. To ascertain the facts in the matter, the court appoints another as its officer—i. e., a referee—and, being furnished with his report, approves or disapproves of the conduct of its accounting officer. Such a distinction as the foregoing must have entered Judge Rapallo's mind when he said in Attorney General v. Continental Life Insurance Co., 93 N. Y. 45–47: 'Ordinarily a referee must look for his fees to the party who takes up the report, and not to the adverse party. Geib v. Topping, 83 N. Y. 46. In this case the party in whose favor the report was made, being a receiver appointed by the court, whose legal expenses are properly payable out of the fund, the court had power in the first instance to order the referee's fees paid directly out of the fund.' I think the analogy between a receiver and an executor or administrator is sufficiently complete to apply the rule last laid down. Both are officers of a court which holds a fund as to which both must account, and from which, before distribution, the

proper charges of each must be deducted. * * * If the surrogate has the power to appoint a referee, it would seem that such power should carry with it the right to direct the compensation."

In the Matter of Maritch, 29 Misc. Rep. 270, 61 N. Y. Supp. 237, decided in the Surrogate's Court, New York County, October, 1899, the question involved was the stenographer's fees upon a reference. Surrogate Varnum said:

"The right of the moving parties to make this application has been questioned. The practice of this court and the authorities which I cite recognize that they have the right to maintain it. Matter of Hurd, 6 Misc. Rep. 171 [26 N. Y. Supp. 893]; Estate of Maria Smith, Surr. Decs. 1894, p. 329; Estate of Philip McDowell, Surr. Decs. 1896, p. 139; Matter of Henry W. Andress, Surr. Decs. 1898, p. 396."

In the Estate of Luigi Manfredi, Surrogate's Decisions 1912, page 1024, Surrogate Fowler said:

"The power of this court to require a party to pay the referee his fees and take up his report can be exercised only when the party so required is the representative of the estate. Matter of Hurd, 6 Misc. Rep. 171 [26 N. Y. Supp. 893]; Matter of Maritch, 29 Misc. Rep. 270 [61 N. Y. Supp. 237]. As to who ultimately is to be charged with the referee's fee is determined by the decree to be entered in the proceeding."

The appellant cites the following authorities:

Matter of Kraus, 4 Dem. Sur. 217: Surrogate Rollins held that the Surrogate's Court is without power to direct a referee to file his report in advance of receiving his fees, or to require any party to pay those fees in advance of such filing; but if the referee shall see fit to file his report without exacting his fee, a party making such payment may, in a proper case, be subsequently reimbursed out of the estate or fund. The court refused to make any provision for the payment of such fees before the report was filed, although the administrator had sufficient funds in his hand to make such payment.

In Morrow v. McMahon, 71 App. Div. 171, 75 N. Y. Supp. 534, the action was brought to settle the accounts of the appellants as executors, to obtain a construction of a will, and to establish that a beneficiary and remainderman thereunder was dead, and that by reason thereof his interest in the estate belonged to the plaintiff. An interlocutory judgment was entered, construing certain provisions of the will and directing that the appellants, as such executors and trustees, render an account. The matter was sent to a referee to take and state the accounts. The appellants refused to take up the report. Plaintiff and all the other defendants made a motion to compel the appellants, as trustees, to take up the report and pay the fees to the referee, stenographer, etc. An order to this effect was made, and they appealed. Mr. Justice McLaughlin, writing for this court, said:

"We are of the opinion that the court had no power to make the order appealed from"

—quoting from Little v. Lynch, 99 N. Y. 112, 1 N. E. 312:

"A referee is not bound to deliver his report without payment of his fees. The interest of the prevailing party will generally secure the taking up of the report. But, if he fails to do so, the referee must then file it in order to prevent a termination of the reference by notice under the statute. Upon

filing the report the referee may doubtless maintain an action for his fees. The acceptance of a reference is a voluntary act, and the referee may decline the reference; but, if he accepts it, he must rely for the payment of his fees upon the interest of the prevailing party to take up the report, and, if he omits to do this, upon his common-law action to recover them, after putting himself in a position to maintain it by filing the report."

Here the report was not filed, and the 60 days after the report had been ready for delivery had not expired.

The decision in Attorney General v. Continental Life Insurance Co., 93 N. Y. 45, is not in point. There the referee was appointed by the court to take and state the accounts of a receiver, and on making a report in favor of the receiver he was directed to pay the referee's fees out of money in his hands, the court saying:

"'In this case, the party in whose favor the report was made being a receiver appointed by the court, whose legal expenses are properly payable out of the fund, the court had power, in the first instance, to order the referee's fees paid directly out of the fund.' Nor does the fact that these appellants are trustees under a will distinguish this case from the Geib or Little Cases. The Code makes no distinction between the rights of parties as individuals and those acting in a representative capacity."

The order appealed from was reversed.

In Carter v. Builders' Construction Co., 130 App. Div. 609, 115 N. Y. Supp. 339, the action was brought to foreclose a mortgage upon real estate. The respondent was appointed referee to sell, and incurred certain expenses in advertising and selling. There was a resale ordered. The referee requested the plaintiff to advance enough to pay the expenses already incurred, the plaintiff refused, and the referee obtained an order directing him to do so. This court, by Mr. Justice McLaughlin, said:

"Ordinarily the expenses incurred upon the sale of mortgaged premises pursuant to a judgment are paid from the proceeds of the sale; and it may be, if enough is not realized from the sale to pay the necessary expenses attending it, then the party at whose instance the sale is made would be liable in an action to recover the same. But such payment cannot be directed in the summary way here attempted. A party cannot be compelled by order to pay the fees or expenses of a referee [citing cases]. The referee was not obliged to act, and before he incurred any expenses he could have insisted that the judgment creditor advance the necessary amount, and, if this were not done, he could refuse to act. Not having done either, it would seem that his only remedy now is by action."

The order was reversed.

It seems to me that neither the Matter of Hurd, nor Attorney General v. Continental Life Insurance Co., upon the authority of which all the surrogate's cases rest, support the order in the case at bar. In the Matter of Hurd, the referee's report had been signed and filed, and the motion was to tax the referee's fees. In the Continental Life Insurance Co. Case, the report had been made in favor of the receiver, whose duty it was to take up the report, and, as all payments by the receiver from the funds in his hands were under the order of the court, a proper case was presented for exercising the power of the court over said funds in the hands of the receiver. No such situation is here presented. The report has never been filed, the fees have never been taxed, and there is no affidavit of the referee or stenographer showing that the

amounts charged for represent the days necessarily employed in the reference under the stipulation.

As referees in the Surrogate's Courts are assimilated by the statute to referees in the Supreme Court, and as the duty, obligation, and limitation of referees in regard to filing their reports and the collection of their fees has been many times fixed and established by this court and by the Court of Appeals, we are able to perceive no reason why any different rule should be applied to referees in the Surrogate's Courts.

Upon the ground that the court was without power, upon the facts disclosed in these papers, to make the order appealed from, it should be reversed, with $10 costs and disbursements to the appellant, and the motion denied, with $10 costs. All concur.